**AMERICA ONLINE, INCORPORATED, Plaintiff–Appellant,**

v.

**AT & T CORPORATION, Defendant–Appellee.**

**No. 99–2138.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 2000.

Decided Feb. 28, 2001.

---

**ARGUED:** Maureen Ellen Mahoney, Latham & Watkins, Washington, D.C., for Appellant. Laura A. Kaster, AT & T Corporation, Basking Ridge, New Jersey, for Appellee. **ON BRIEF:** Everett C. Johnson, Jr., Minh N. Vu, Latham & Watkins, Washington, D.C.; Richard A. Cordray, Grove City, Ohio; Paul T. Cappuccio, Randall J. Boe, Laura E. Jehl, America Online, Inc., Dulles, Virginia, for Appellant. Howard Spierer, Judith A. Archer, AT & T Corporation, Basking Ridge, New Jersey; Edward T. Colbert, Kenyon & Kenyon, Washington, D.C.; Carter C. Phillips, Sidley & Austin, Washington, D.C.; Constantine L. Trela, Jr., Sidley & Austin, Chicago, Illinois, for Appellee.

Before NIEMEYER and LUTTIG, Circuit Judges, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.

Affirmed if part, vacated in part, and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILLIAMS, joined. Judge LUTTIG wrote a concurring and dissenting opinion.

## OPINION

NIEMEYER, Circuit Judge:

America Online, Inc. ("AOL") commenced this action against AT & T Corporation ("AT & T") for AT & T's alleged infringements of three trademarks that AOL claims in connection with its Internet services—"Buddy List," "You Have Mail," and "IM." The district court entered summary judgment in favor of AT & T with respect to each mark, concluding that, as a matter of law, the alleged marks are generic and cannot be enforced as the exclusive property of AOL. For the reasons that follow, we conclude that the question whether "Buddy List" is a valid mark raises disputed issues of material fact and therefore cannot be resolved on summary judgment. With respect to the two other claimed marks, we affirm for the reasons given herein.

I.

Founded in 1985, AOL is now the world's largest Internet service provider, claiming more than 18 million members who pay a monthly fee for its services.

These services include the facility to transmit and receive electronic mail ("e-mail") and a means to establish real-time communication ("chat") through "instant messaging."

In connection with its chat service, AOL uses "Buddy List" and "IM" to describe features of the service. The "Buddy List" enables the subscriber to create a list of identified screen names employed by other users with whom the subscriber wishes to communicate and displays which of those pre-selected users is currently using the AOL service. If a "Buddy" is identified by the "Buddy List" as online, the subscriber may then click a button labeled "IM," which are the initials of "instant messaging," and initiate a real-time chat session with the subscriber so identified on the "Buddy List." AOL has used "Buddy List" and "IM" since at least 1997. It has promoted these terms extensively, and it asserts now that it has a proprietary interest in them. In addition, with respect to "Buddy List," AOL obtained a certificate of registration on June 23, 1998, from the Patent and Trademark Office, indicating that the mark has been registered on the Principal Register and that AOL has used the mark as a service mark since August 31, 1995.

Also, in connection with its e-mail service, AOL advises its subscribers that they have received e-mail by displaying the words "You Have Mail," by playing a recording that announces, "You've got mail," and by depicting an icon of a traditional mailbox with the red flag raised. AOL contends that it has used these marks to describe its e-mail service since 1992, that it has promoted them extensively, and that it now has a proprietary interest in them.

AT & T, a competing Internet service provider, uses marks or phrases similar to those claimed by AOL in connection with its service to subscribers. It uses the terms "Buddy List," "You have Mail!," and "I M Here."

In December 1998, AOL commenced this action, seeking preliminary and permanent injunctive relief against AT & T to prohibit it from using marks similar to those asserted by AOL. In its complaint, it alleged that AT & T's use of similar marks violated the trademark dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c), and infringes AOL's marks in violation of 15 U.S.C. § 1114. In addition, it demanded an accounting of AT & T's profits, damages, punitive damages, attorneys fees, and costs. In its answer, AT & T contended, among other things, that AOL's asserted marks were "common, generic terms for the e-mail, instant messaging, communication, and related services." It filed a counterclaim seeking a declaratory judgment that AOL's marks are not valid trademarks and requesting an order directing the Patent and Trademark Office to cancel the registration for "Buddy List."

The district court denied preliminary injunctive relief and, following discovery, granted AT & T summary judgment on the ground that all three of the claimed marks were generic and therefore incapable of functioning as trademarks. The court also directed that a copy of its order be sent to the Commissioner of Patents and Trademarks "in order to effect the cancellation of the BUDDY LIST mark." The district court rested its decision on evidence in the record obtained from third-party sources, including Internet dictionaries, published users' guides to both the Internet and to AOL services, use of the alleged marks by competitors, and use by AOL of the alleged marks in a manner suggesting their generic character. Although AOL proffered survey evidence in support of its contention that the marks "You Have Mail" and "Buddy List" were protected trademarks, the court considered the survey evidence irrelevant because it had concluded that the marks were generic and that words used generically cannot become trademarks by association.

AOL's contentions on appeal break down into two general arguments. First, it argues that the district court erred when it concluded that "Buddy List" is generic,

despite the fact that it is a federally registered trademark. It asserts that because the trademark office is an expert agency to whom Congress has delegated power to administer the Lanham Act, its decision to register "Buddy List" should be accorded deference under the doctrine of *Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Second, AOL contends that the district court, in concluding that the marks are generic, failed to apply the "primary significance" test correctly insofar as the court focused on usage of the mark in published sources rather than on the perceptions of the relevant consuming public, which were evidenced by AOL's surveys.

## II. "Buddy List"

■ AOL's principal argument for the validity of "Buddy List" as a "suggestive" mark rests on the significance of its having obtained a certificate of registration from the Patent and Trademark Office ("PTO"). It argues that the district court erred in failing to give deference to the expert decision of the PTO to register the mark without requiring evidence of secondary meaning.

■ To address this argument, we must first recognize the statutory background against which a certificate of registration issues. When the Commissioner of Patents and Trademarks, in furtherance of an application of a registrant, lists a mark on the Principal Register, he issues a certificate of registration which provides the registrant with prima facie evidence of (1) the validity of the mark and its registration; (2) the registrant's ownership; and (3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration. *See* 15 U.S.C. § 1057(b). And the Commissioner does not register a mark unless it meets the requirements established by statute. *See, e.g.,* 15 U.S.C. §§ 1051–1057, 1064. With a certificate of registration, therefore, the registrant obtains prima facie evidence that its mark is not generic in the eyes of the relevant public, *see* 15 U.S.C. § 1064(3), and that its

mark is not "merely" descriptive, but at a minimum is descriptive *and* has obtained secondary meaning, *see* 15 U.S.C. § 1052(e). The Commissioner need not require evidence of secondary meaning if the applied-for mark is inherently distinctive by being suggestive, arbitrary, or fanciful. *See* PTO, U.S. Dep't of Commerce, *Trademark Manual of Examining Procedure* § 1209.01, at 1200–106 (2d ed. rev. 1.1 1997); *see also Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984) (classifying marks into four broad categories of ascending strength or distinctiveness: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful).

AOL argues that the district court erred in failing to accord deference to this administrative proceeding before the PTO by which the Commissioner issued a certificate of registration, thus indicating that it owns a valid suggestive mark in "Buddy List." AOL maintains:

> The PTO's ruling is agency action undertaken with special expertise within the scope of its delegated authority under the Lanham Act. As such, its determination is entitled to substantial deference. *See, e.g., Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The district court acknowledged that "Buddy List" "has been treated in a suggestive manner" according to some evidence. But it found that "the only reasonable conclusion which could be drawn from the evidence points to generic usage." Of particular importance to the Court was the fact that "virtually every third party which has used the phrase, including so many of AOL's competitors, use it as a generic phrase." AT & T argues further on appeal that AOL received "the maximum benefit of the registration afforded by law." It maintains that the benefit accorded by AOL's registration of "Buddy List" was not "sufficient in light of the overwhelming evidence presented by AT & T. AT & T's 'compelling' and 'overwhelming'

evidence of genericism amply supports the district court's ruling that no reasonable jury could find 'buddy list' anything other than generic."

■ *Chevron*, on which AOL relies so heavily, directs a court, when reviewing an agency's interpretation of a statute, to engage in a two-step process. First, it must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. Only if the statutory language is silent or ambiguous with respect to the question posed does the court then proceed to the second step—to determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. Thus, *Chevron* deference is a tool of *statutory* construction whereby courts are instructed to defer to the reasonable interpretations of expert agencies charged by Congress "to fill any gap left, implicitly or explicitly," in the statutes they administer. *Id.* at 843, 104 S.Ct. 2778.

In this case, however, AOL is not asking the court to defer to the PTO's interpretation of a particular provision of the Lanham Act, nor is it asking us to defer to a PTO regulation that arguably controls the outcome of this case. Instead, AOL is arguing for the application of *Chevron* deference to what amounts to a quasi-adjudicatory decision of the PTO—that "Buddy List" is a suggestive trademark and therefore is entitled to protection under the Lanham Act. AOL's argument that courts should defer to an agency decision, therefore, would not appear to be governed by *Chevron*, which relates to statutory interpretation, but rather by principles governing administrative adjudications of mixed questions of law and fact. We would expect AOL to have argued, therefore, that the PTO's decision to register "Buddy List" ought not be reversed if supported by substantial evidence. *See generally* 5 U.S.C. § 706(2)(e).

■ This course of argument, however, is foreclosed by the express terms of the Lanham Act, which vest ultimate adjudica-tion of trademark disputes in federal courts. Thus, trademark holders who allege infringement may sue infringers in federal court and obtain either monetary damages, equitable relief, or both. *See generally* 15 U.S.C. §§ 1114–1117, 1121, 1125. More revealing, Congress expressly vested in federal courts the power to "determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Moreover, Congress left no doubt that the PTO's decisions regarding registrations fall under the supervision of federal courts, as it declared that such judicial "orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby." *Id.* Finally, Congress plainly stated the limited deference that a certificate of registration provides: it must be received into evidence but then only serves as "prima facie evidence of the validity of the registered mark." *See* 15 U.S.C. §§ 1057(b), 1115(a). In none of these provisions conferring on federal courts the power to adjudicate rights under the Lanham Act does Congress instruct the courts to review registration decisions of the PTO under a deferential standard. To the contrary, Congress "has directly spoken" on this issue, specifying a more limited standard: the agency action is "prima facie evidence" of specified facts, and no more.

■ Although we have observed that a district court should not freely substitute its opinion for that of the PTO, *see RFE Indus., Inc. v. SPM Corp.*, 105 F.3d 923, 926 (4th Cir.1997), this observation was not made because the PTO was entitled to deference, but rather because its decision to register a mark, without requiring evidence of secondary meaning, was "powerful *evidence* that the registered mark is suggestive and not merely descriptive," *id.* (emphasis added); *see also Petro Stopping*

*Ctrs. L.P. v. James River Petroleum Inc.*, 130 F.3d 88, 93 (4th Cir.1997) (holding that the PTO's determination is "only prima facie evidence that the mark is suggestive," and, for that reason, "may be rebutted").

■ Accordingly, we conclude that in deciding whether "Buddy List" was generic, the district court had no obligation to afford *Chevron*-type deference to the decision of the PTO. Rather, it was required to receive the certification of registration for "Buddy List" into evidence and treat that certificate as prima facie evidence of the validity of the mark—and, in this case, as prima facie evidence that it was suggestive.

■ While the district court acted appropriately in this case in receiving the certificate of registration of "Buddy List" as prima facie evidence that the mark was suggestive, it thereafter erred in ignoring that evidence. The prima facie evidence provided by the certificate of registration was in this case sufficient to establish a question of material fact that could not be resolved on summary judgment. As the Committee Note to Federal Rule of Evidence 301 (dealing with presumptions) states, "[a] presumption does not vanish upon the introduction of contradicting evidence . . .; instead it is merely deemed sufficient evidence of the fact presumed, to be considered by the jury or other finder of fact." Although evidence rebutting the presumption may neutralize the presumption itself—i.e., that the burden of proof on the fact giving rise to the presumption has been met without rebutting evidence—it does not eliminate from the case the evidence itself that gave rise to the presumption. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000). Thus, through the certificate of registration, the Commissioner introduces his opinion that the application of the registrant was sufficient to demonstrate a valid mark.

But in addition to the evidence provided by the certificate of registration, the district court observed that the record contained *other* evidence "that BUDDY LISTR has been treated in a suggestive manner," and the court itself recognized that this other evidence "tend[ed] to create a factual dispute." It found this evidence insignificant, however, because the evidence of genericness was "overwhelming," and it determined that a reasonable jury could only conclude that "Buddy List" was generic. In so weighing the evidence, however, the court violated a basic principle of Rule 56 jurisprudence—that in determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to the nonmoving party.

Because we conclude that the validity of "Buddy List" cannot be determined on summary judgment in the context of the record evidence presented in this case, we vacate the district court's rulings on "Buddy List," including its order directing the Commissioner to cancel the certificate of registration, and remand for further proceedings.

### III. "You Have Mail"

■ The district court concluded that the alleged mark "You Have Mail" functions primarily to inform AOL subscribers that they have e-mail, which the court found "is also known as mail." The court concluded that "when the common word or phrase is used as a mark for its ordinary meaning, the mark is generic." Accordingly, it ruled that AOL could not enforce "You Have Mail" as a trademark.

AOL argues that there is no evidence in the record that "You Have Mail" is "primarily perceived by consumers as 'the common name' of a service," as would meet the test of genericness stated in *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455 (4th Cir.1996), and *Glover v. Ampak, Inc.*, 74 F.3d 57 (4th Cir.1996). It also contends that the district court erred in disregarding survey evidence that indicates that "You Have Mail" is associated with AOL. Finally, AOL argues that the Lanham Act does not exclude common

phrases from the scope of protection—a principle that it contends the district court misunderstood.

■ AOL has not registered "You Have Mail" with the PTO, and therefore it must carry the burden of establishing the validity and its ownership of the mark as part of its larger burden in a trademark infringement action. That burden is to prove that it has a valid, protectable trademark and that the defendant is infringing its mark by creating confusion, or a likelihood thereof, by causing mistake, or by deceiving as to the attributes of its mark. *See* 15 U.S.C. §§ 1114, 1125; *Petro Stopping Ctrs.*, 130 F.3d at 91. We agree with the district court that AOL did not meet this burden.

First, the record establishes, without contradiction, that "You Have Mail" has been used to inform computer users since the 1970s, a decade before AOL came into existence, that they have electronic mail in their electronic "mailboxes." AT & T has noted, for example, that the UNIX operating system, one of the most widely used in the computer industry, has, since before AOL was formed, displayed the phrase "You Have Mail" or "You Have New Mail" whenever a user has received electronic mail. In the context of computer-based electronic communications across networked computers, the phrase "You Have Mail" has been used for the common, ordinary purpose of informing users of the arrival of electronic mail in their electronic mailboxes. In addition, books describing how a computer user is informed that he has e-mail on UNIX similarly reveal the functional nature of the phrase. For example, the following explanations for the presence of mail are described with "You Have Mail."

- "When you first log into the system, it will inform you if you have any mail (i.e., someone has sent you mail). The system will appear as follows: ... UNIX ... you have mail." Richard Gauthier, *Using the UNIX System* 108 (1981).

- "Accessing your mail: Immediately upon logging in, should you have mail, you will see a message indicating: You Have Mail." Peter M. Birns et al., *UNIX for People* 242 (1985).

- "When you log in your system, you are told whether you have electronic mail waiting for you. If there is mail waiting, you'll see a line like the following: You Have Mail." Kevin Reichard, *UNIX: The Basics* 160 (2d ed.1998).

Furthermore, other companies that provide e-mail services have used "You Have Mail," or derivations thereof, to notify their subscribers of the arrival of e-mail messages. Prodigy Communications has used the spoken phrase, "You Have New Mail," since 1993 in connection with its online service. Prodigy has also used, but no longer uses, the phrase "You Have Mail" in the e-mail notification feature of its Internet service. Netcom, an Internet service provider, uses "You Have Mail" to inform users that they have e-mail. Qualcomm has used "You Have New Mail" since the late 1980s in its Eudora Pro and Eudora Light e-mail programs to notify users of new e-mail. Banyan's "Beyond Mail Program," offered for intra-company systems, provides the notice "You Have New Mail" whenever a user receives e-mail transmitted internally or from the Internet. Care–Mail, a web-based e-mail provider, uses "You Have *New* Mail" to notify users when they have e-mail and "You Have No New Mail" to inform them that they have no new mail. "Internet Relay Chat," a software program used by the Internet Relay Network, has used "You Have New Mail" to announce the presence of e-mail messages when its users log in.

It is significant in the context of this usage that AOL has never registered "You Have Mail," nor has it attempted to enforce it as a mark prior to this action.

Second, in addition to the long and uninterrupted use by others of "You Have Mail," AOL's own use of "You Have Mail"

has been inconsistent with its claim that the phrase is a trademark. Rather than describing a service that AOL offers—and indicating that it is describing such a service—AOL simply uses "You Have Mail" when the subscriber *in fact* has mail in the electronic mailbox. Once the user opens the new message, the phrase "You Have Mail" disappears from the user's screen. Moreover, if the subscriber does not have mail when he logs on, the screen does not display "You Have Mail." AOL's use of the phrase, conditioned on whether mail is present, does not describe AOL's e-mail service, but rather simply informs subscribers, employing common words to express their commonly used meaning, of the ordinary fact that they have new electronic mail in their mailboxes.

This functional manner in which AOL uses "You Have Mail" is consistent with a *public perception* of the phrase as describing whether or not mail is in an electronic mailbox, rather than as describing a service associated with AOL. For example, *America Online for Dummies*(TM) states, "You have two ways to see your new mail. One is pretty obvious. . . . The obvious one is the big picture button of a hand holding up some letters, emblazoned with a subtle notation You Have Mail. (I have seen *obvious* before and it looked a lot like this.)" John Kaufeld, *America Online for Dummies*(TM)99 (1995). Similarly, in *Sam's Teach Yourself, America Online© 4.0 in 24 Hours*, the reader is told, "You'll know when you sign on if you have mail." Bob Temple, *Sam's Teach Yourself America Online© in 24 Hours*, 24 Fig. 2.10 (1999). The text explains, "America Online announces when you've got mail by saying 'You've Got Mail!'" *Id.*

Indeed, AOL itself has made no claim that "You Have Mail" has been used to indicate anything but the information that the subscriber has mail. Even in its complaint, it asserts little more, alleging that it has used "You Have Mail . . . in connection with its automatic e-mail notification services for AOL Service members." The scope of this asserted use—to give notice of mail to subscribers—is no broader than the words' common meaning.

We agree with the district court that when words are used in a context that suggests only their common meaning, they are generic and may not be appropriated as exclusive property. *Cf. generally* 2 *McCarthy on Trademark & Unfair Competition* § 11:11 (4th ed.1997) (hereinafter *McCarthy* ) (noting that "common" words may be used as trademarks when used in an arbitrary, rather than familiar context). But a debate over whether a word or phrase is being used in a context that communicates merely its common meaning can quickly become as metaphysical as the study of language itself. At the basic level, we can conclude that when a fruit merchant sells fruit as "apples" or "blackberries," he should never be able to exclude competitors from similarly using the words "apple" or "blackberries" to sell their fruit. But if the common word "apple" or "blackberry" is used by a computer merchant in selling computers, we conclude that the usage, not the word, is so uncommon and therefore "distinctive," that the computer merchant should be entitled to exclude other competitors from using "apple" or "blackberry" in the sale of its computers. While this example readily demonstrates the principle, its application can become difficult when words or phrases are used in a context *close* to their common meaning. And because our dynamic economy, characterized by extensive creativity and inventiveness, produces new products and services for which no words of description have previously existed, entrepreneurs and the public are engaged in a continual tug of war over naming these new products and services—entrepreneurs wishing to gain some exclusive rights to the names of their inventions and the public wishing merely to have a convenient term by which to refer to the new product or service to facilitate communication. The words "Internet," "pixel," "chip," "software," "byte," or "e-mail" might well have become marks distinguishing one entrepreneur's product

or service from all other electronic networks, screen density aspects, transistorized components, sets of computer commands, groups of digital information, or electronic communications. Yet, because of pervasive use, these terms have become generic. And even when created words for new products have become strong marks, the public's pervasive use of these marks sometimes creates a real risk that their distinctiveness will disappear, a process Professor McCarthy terms "genericide," as occurred with earlier trademarks such as "Thermos," "Aspirin," "Cellophane," and "Escalator."

The task of distinguishing words or phrases functioning as trademarks from words or phrases in the "linguistic commons" begins with the development of an understanding of the common meaning of words and their common usage and then proceeds to a determination of whether the would-be trademark falls within this heartland of meaning and usage. The farther a would-be mark falls from the heartland of common meaning and usage, the more "distinctive" the would-be mark can become. At one level, this determination of word meaning and usage can be a question of law, but at another, it becomes a factual question as to what the relevant public perceives. The dichotomy between the legal question and the factual question is similar to that which exists in construing contracts—when meaning and usage are unambiguous, the court construes the contract, but when they are ambiguous, the factual question must be resolved by the factfinder.

 When a word or phrase does not fall within the heartland of common meaning and usage, but is nevertheless close, its distinctiveness is strengthened by the entrepreneur's use. Thus, words or phrases that are not directly descriptive of a company, product, or service, but rather suggest, through operation of the consumer's imagination, the company, product or service, can become trademarks. See *Pizzeria Uno*, 747 F.2d at 1527–28. Similarly, well-recognized slogans used without any

direct context can, through use, become marks because with such a generalized application, they are not used in the context of their common meaning, but rather suggestively. Witness "Just do it!", *see Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1227 n. 2 (7th Cir.1993) (assuming, without deciding that Nike has a trademark in this phrase), and "We try harder," *see In re Marriott Corp.*, 517 F.2d 1364, 1367 (C.C.P.A.1975) (noting registration of this slogan).

At bottom, the law of trademarks intends to protect the goodwill represented by marks and the valid property interests of entrepreneurs in that goodwill against those who would appropriate it for their own use. But it likewise protects for public use those commonly used words and phrases that the public has adopted, denying to any one competitor a right to corner those words and phrases by expropriating them from the public "linguistic commons." Enforcing these conflicting policies creates line-drawing problems that are not always easily solved. *See generally* 2 *McCarthy*, § 1:27 (discussing the balance between the right to protect and the right to use).

In the case before us, the record context of "You Have Mail" permits us to conclude as a matter of law that AOL's usage of the would-be mark falls within the heartland of common meaning and usage and therefore that AOL may not exclude others from using the same words in connection with their e-mail service. This is indicated by two significant facts that remain undisputed. First, AOL uses "You Have Mail" functionally—consistently with that phrase's common meaning—to tell its subscribers they have mail. Second, others in the relevant industry have used and continue to use "you have mail," or a similar phrase, to announce the presence of an e-mail message in an electronic mailbox. AOL has advanced no evidence that it uses "You Have Mail" in any distinctive manner. We therefore agree with the district court that AOL may not enforce "You Have Mail" as a trademark in connection with its e-mail notification service.

AOL argues that its survey evidence indicates an association in the public's eye between "You Have Mail" and AOL and that this association is sufficient to permit a reasonable factfinder to conclude that "You Have Mail" is a trademark descriptive of its e-mail service that has acquired secondary meaning. AOL contends, therefore, that only a jury can decide whether "You Have Mail" is a trademark. Its evidence for secondary meaning consisted of a random survey of 507 Internet users whose households were "very likely paying to be receiving an Internet access service or an online service during the three months following the survey." The 507 respondents were divided into four groups: Group A, 250 respondents; Group B, 85; Group C, 86; and, Group D, 86. The respondents in Group A were first asked whether they had heard or seen the expression "You Have Mail." Those who answered affirmatively were then asked whether they associated that expression with one specific Internet or online service provider, or more than one provider. Those who associated the expression with one specific provider were then asked to identify the particular provider with whom they associated the phrase. Respondents in Groups B, C, and D were asked similar questions about different phrases. Instead of being queried for their reaction to "You Have Mail," respondents in Group B were asked about "New Mail Has Arrived"; respondents in Group C were asked about "Mail Is Here"; and, respondents in Group D were asked about "Mail Call." The results obtained from the answers given by the respondents in Groups B, C, and D were termed the "Control Condition," which, according to the design of the survey, was to provide "an important baseline against which to judge the strength of people's associations with the expression 'You Have Mail.'"

Out of the group that heard "You Have Mail," 41% of the respondents associated the phrase with a single Internet or online service provider, and 37% of the respon-dents associated the phrase with AOL. In Groups B, C, and D, only 9% of the respondents were able to associate the phrase they heard with a single Internet or online service provider, and only 5% were able to name a specific Internet or online service provider with which to associate the phrase they heard. AOL argues that a reasonable jury could conclude from this evidence that the primary significance to the relevant public of the phrase "You Have Mail" is to denote its source and therefore that the term is not generic. See 15 U.S.C. § 1064(3) ("The primary significance of the registered mark to the relevant public ... shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used").

At this summary-judgment stage of the proceedings, we must accept AOL's assertion that a portion of the public associates "You Have Mail" with AOL, the most widespread user of the phrase. But this fact does not reveal that the primary significance of the term "You Have Mail" to announce the arrival of new e-mail is not the functional, heartland usage of the phrase. This usage does not distinguish AOL's e-mail service from that of any other service provider because the phrase "You Have Mail" is used in its commonly understood way—i.e., functionally to convey the common meaning of words—and not distinctively. AOL's evidence of association may establish what is called "de facto secondary meaning," but such secondary meaning does not entitle AOL to exclude others from a functional use of the words. See 1 McCarthy, § 7:66. Stated otherwise, the repeated use of ordinary words functioning within the heartland of their ordinary meaning, and not distinctively, cannot give AOL a proprietary right over those words, even if an association develops between the words and AOL. As Professor McCarthy explains, "Even if a functional feature has achieved consumer recognition (secondary meaning) of that feature as an indication of origin, the feature cannot serve as a legally protectable

symbol." 1 *McCarthy*, § 7:66; *see also A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 305 (3d Cir.1986) (noting, "[t]o the extent that a trademark also communicates functional characteristics, it does not function as a trademark").

We therefore conclude that "You Have Mail" has been and continues to be used by AOL and by others to alert online subscribers that there is electronic e-mail in their electronic mailboxes, and no more. This functional use of words within the heartland of their ordinary meaning cannot give rise to a trademark for the e-mail service when it is no more than the announcement of the arrival of a message. Because AOL has failed to establish its exclusive right to "You Have Mail," we affirm the district court's conclusion that AOL may not exclude others from use of those words in connection with its e-mail service.

### IV. "IM"

 Finally, AOL contends that the district court erred in refusing, based on a finding of genericness, to enforce "IM" as its trademark for its instant messaging service. The district court, reciting undisputed facts, concluded that "IM" is "an initialism" for "instant message," and that, despite their management's admonitions against using "IM" as a noun or a verb, AOL employees used "IM" as a noun or a verb in lieu of "instant message," such as in "They had an IM pending" or "Stop IM'ing me." The court also pointed to books, dictionaries, and glossaries defining "instant message" with the "IM" designation such as: "instant message, IM for short," or "instant message (IM)." It noted that Yahoo!, in promoting its pager service, claimed that it was providing "IMs." Based on these and similar facts, as well as the fact that AOL does not claim any proprietary interest in the phrase "instant messaging," the district court held that "IM stands for 'instant message' (as AOL admits), and because the primary significance of 'instant message' is to stand for an 'instant message,' the term ... is generic."

AOL bases its claim to "IM" on its assertions that "IM" has frequently been associated by the media with AOL and that no other online or Internet service provider calls its real-time communications feature "IM." It argues that because it was one of the first companies to provide "IM," a jury could conclude that "IM" denotes the source, not the feature. But AOL has offered no evidence to support that contention. It can only contend in a conclusory manner that "IM" is a trademark rather than simply the product at issue. Accordingly, while we do not determine that "IM" is generic, we nevertheless agree with the district court's decision, based on this record, to deny AOL enforcement of "IM" as its trademark.

### V.

In sum, we conclude that the validity of "Buddy List" cannot be resolved on summary judgment in view of genuine issues of material fact. Accordingly, we vacate the district court's order finding "Buddy List" generic, as well as its order directing cancellation of the certificate of registration for that mark, and remand for further proceedings. With respect to the district court's rulings denying enforcement of "You Have Mail" and "IM" as the trademarks of AOL, we affirm.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

LUTTIG, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority, and for the reasons it identifies, that a trial is necessary to determine whether BUDDY LISTR is a protectable trademark under the Lanham Act. I also agree, but solely because of the complete absence of evidence of secondary meaning proffered by AOL, that AOL has not demonstrated its entitlement to trademark protection for "IM", the company's designation for its real-time messaging service.

However, I would not decide the question of whether AOL is entitled to protec-

tion for its unregistered e-mail notification feature that includes the phrase "YOU HAVE MAIL" because it is my understanding that AOL no longer informs its customers that they have e-mail through use of the phrase "YOU HAVE MAIL." Rather, it now informs them that they have e-mail with the different message "YOU'VE GOT MAIL." And, as the district court explicitly found, it is undisputed that AT & T never has used, and "has claimed no future plans to use," this phrase to inform its customers of the arrival of e-mail.*

Without intending in any way to intimate a view on AOL's entitlement to protection for the e-mail notification feature that includes the phrase "YOU'VE GOT MAIL" (or perhaps by negative implication, my view on its entitlement to protection for the phrase "YOU HAVE MAIL"), I believe—as my questions at argument ought to have suggested—that the feature that includes the phrase "YOU'VE GOT MAIL" is sufficiently different from the phrase "YOU HAVE MAIL" in both its grammatical dysfunctionality and likely secondary meaning, and possibly in its genericness as well, as to render a decision on its protection a separate matter altogether from a decision as to protection for the feature that includes the phrase "YOU HAVE MAIL." Whether AOL is entitled to trademark protection for its current e-mail notification feature because of its arguable distinctiveness and product or service association is a question the resolution of which is unnecessary as between the parties before us.

I should add that, in declining to address the question of AOL's proprietary entitlement to the "YOU HAVE MAIL" message, I am fully aware of the law of trademark abandonment and the fact that AOL yet may assert an exclusive right to use of that message. Under the circumstances—including that the parties have not informed the court of AOL's messaging change—and for the narrow purposes of this litigation only, however, I would deem the standard for abandonment satisfied.

---

* Were I to decide this question, I likely would be unable to join in the majority's analysis, even were I able to join in its result, for the majority suggests that words used for their ordinary meaning can *never* be used "distinctively." *See, e.g.,* op. at 823. It is of course true that "common words"—or even *uncommon* words—used in a generic sense will not be afforded trademark protection; the public has the right to use the common descriptive name for a product. *Perini Corp. v. Perini Construction, Inc.,* 915 F.2d 121, 124 (4th Cir.1990). *See also Ale House Management, Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 141 (4th Cir.2000); *Glover v. Ampak, Inc.,* 74 F.3d 57, 60 (4th Cir.1996). But it is no less true that "common words" afforded their "ordinary meaning," may, from time to time, be

deemed distinctive either as a descriptive mark (with proof of secondary meaning) or as a suggestive mark. Thus, contrary to the majority opinion, the mere fact that a term or mark describes or suggests a function does not, *ipso facto*, preclude trademark protection. *See also Qualitex Co. v. Jacobson Products Co., Inc.,* 514 U.S. 159, 163, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (color can become distinctive "much in the way that descriptive words on a product (say, 'Trim' on nail clippers or 'Car–Freshener' on deodorizer) can come to indicate a product's origin."). Whether "ordinary words" "also communicate[ ] functional characteristics" may be a starting point, but it is not the ending point, as the majority presumes.