PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

U. S. SEARCH, LLC, a Virginia
corporation,
                    *Plaintiff-Appellant,*

           v.                                    No. 01-1285

US SEARCH.COM INCORPORATED, a
California corporation,
                    *Defendant-Appellee.*

U. S. SEARCH, LLC, a Virginia
corporation,
                    *Plaintiff-Appellant,*

           v.                                    No. 01-1782

US SEARCH.COM INCORPORATED, a
California corporation,
                    *Defendant-Appellee.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge;
T. S. Ellis, III, District Judge.
(CA-00-554-A)

Argued: June 6, 2002

Decided: August 16, 2002

Before MICHAEL and GREGORY, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Michael and Senior Judge Beezer joined.

---

**COUNSEL**

**ARGUED:** Bradford Elby Kile, KILE, GOEKJIAN, LERNER & REED, P.L.L.C., Washington, D.C., for Appellant. Roger E. Warin, STEPTOE & JOHNSON, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Andrew J. Sloniewsky, STEPTOE & JOHNSON, L.L.P., Washington, D.C., for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

U.S. Search, LLC (LLC) brought this action against U.S. Search.com, Inc. (DotCom) alleging false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Virginia common law. LLC, claiming first use of the mark "U.S. Search," sought to enjoin DotCom from using the term and asked the district court to direct the Commissioner for Patents and Trademarks to cancel DotCom's previously registered service mark, "1-800-U.S. Search." The court found that "U.S. Search" was not entitled to service mark protection when used in connection with LLC's executive recruiting services and granted summary judgment in favor of defendant DotCom. Finding no error, we affirm.

I.

Appellant LLC is an executive recruiting and placement firm that specializes in recruiting for the plastics industry. The company, located in Falls Church, Virginia, was formed in December 1998 by Arnold Hiller. Hiller is the company's president and sole recruiter. LLC focuses primarily on placing senior level management candidates, serving both employers seeking applicants and applicants seek-

ing employment. Its fees are usually derived from a percentage of first year compensation, often exceeding $15,000 per placement.[1]

Appellee DotCom is a publicly traded corporation that has provided access to online public record information over the Internet and through the use of its toll-free telephone number, 1-800-US-SEARCH, since 1995. DotCom is a Delaware corporation with its principal place of business in Los Angeles, California. Traditionally, DotCom's services were marketed and used to locate missing people, such as relatives, friends, or old college roommates.

In October of 1996, DotCom, through its predecessor 800-U.S. Search, Inc., filed a service mark application for the mark "1-800-U.S. Search" for "computer services, namely providing databases in the field of individual telephone numbers, addresses, and social security numbers," in International Class 42. The application listed 1994 as the year of first use, but the date was later amended to February 16, 1995. The mark was registered with the United States Patent and Trademark Office (PTO) on September 29, 1998.

In the last quarter of 1999, DotCom began offering its business customers the ability to verify a prospective employee's credentials and background after the employer had identified the candidate. Dot-Com does not interview prospective clients, nor does it present candidates to an employer for placement or negotiate terms of employment. The added services it now offers are merely screening services, where DotCom completes criminal background checks and checks references, *after* candidates have been identified. The charge for employee

---

[1]Prior to forming LLC, Hiller owned and operated U.S. Search, Inc. (Inc.), where he also specialized in executive recruiting for the plastics industry. Hiller formed the company in 1982. He began operations with approximately twelve recruiters working in a number of different fields of employment specialization. In 1991, Inc. terminated business and filed for Chapter 7 bankruptcy. When doing so, it listed no trademarks, patents, or other forms of intellectual property as assets. Hiller also filed for individual bankruptcy. After closing Inc., Hiller conducted his executive recruiting services from his home in Arlington, Virginia for several years, before moving the operation out of his home and later forming LLC in 1998.

screening services begins at approximately $50, and rarely exceeds $200. In 2000, after DotCom began marketing its business services, LLC claims that it received over 325 telephone calls that were intended for DotCom.

On April 3, 2000, LLC filed a two count complaint against Dot-Com alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under Virginia common law. DotCom counter-claimed, alleging infringement of its federally registered mark, 15 U.S.C. §§ 1114, 1116-18, false designation of origin, 15 U.S.C. § 1125(a), and common law unfair competition.

Days after filing suit, LLC submitted an application to the PTO to register "U.S. Search" as a service mark.[2] On December 5, 2000, the PTO issued an office action refusing registration because LLC's mark, when used on or in connection with the identified services, so resembled two other marks, "1-800-U.S. Search" and "U.S. Record Search," that it was "likely to cause confusion, to cause mistake, or to deceive." J.A. 676.[3]

After discovery, DotCom moved for summary judgment, raising four grounds. It asserted that 1) LLC's action was time barred, 2)

---

[2]The application listed LLC's services as "employment consulting services to businesses and individuals in the field of employee screening, recruitment, referrals and placement and staffing; promotion and productivity decisions; job definition and development; motivational counseling; salary and benefit surveying and assisting in staff reorganizations; evaluating pre-employment applications and pre-employment surveys and providing hiring guidance to prospective employers; employment recruiting services, namely, identifying, screening and evaluating potential new candidates; . . . employment placement services, namely, scheduling and arranging interviews, interview assistance, and resume assistance. . . ."

The application also stated that LLC provided "pre-employment background verification services, namely obtaining court records of potential employees, checking personal, professional and/or financial references and educational background of potential employees." J.A. 667.

[3]The PTO also suggested that LLC disclaim any rights in the word "search."

LLC could not claim first use of the mark, 3) LLC's use of the mark is generic, or at best descriptive with no evidence of secondary meaning, and 4) if LLC's mark is protectable, LLC cannot demonstrate a likelihood of confusion. After a hearing, the district court granted summary judgment in favor of DotCom, finding that "U.S. Search" was at best descriptive, and because LLC provided no evidence of secondary meaning, the term was not entitled to service mark protection. On January 26, 2001, the court entered an order dismissing both counts of LLC's complaint with prejudice and ordering the matter to proceed to trial on DotCom's counterclaims. A month later, DotCom stipulated to the dismissal of its counterclaims. In March 2001, DotCom moved for an award of costs under Federal Rule of Civil Procedure 54(d). The district court, after a hearing, awarded DotCom $2,482 in costs. This appeal followed.

## II.

LLC's main argument on appeal is that the district court erred in finding that its mark was not entitled to service mark protection, and thus erred in granting summary judgment in favor of DotCom.[4] We review a district court's grant of summary judgment *de novo*, applying the same standards employed by the district court. *Lone Star*

---

[4]LLC raises two other arguments, which merit only brief discussion. First, it argues that the district court improperly refused to consider proposed expert testimony by Gary D. Krugman, a trademark attorney in private practice and former Administrative Trademark Judge with the Trademark Trial and Appeal Board. The district court explained that Mr. Krugman's proffered testimony was nothing more than a legal opinion and was thus inadmissible. Reviewing the trial court's decision for abuse of discretion, we find no error. *See Cooper v. Smith & Nephew, Inc.*, 259 F.2d 194, 200 (4th Cir. 2001). Second, LLC asserts that the district court abused its discretion in awarding DotCom certain costs associated with the litigation. LLC suggests that DotCom was not a prevailing party, *see* Fed. R. Civ. P. 54(d)(1), because it voluntarily dismissed its counterclaim against LLC. However, even though DotCom dismissed its counterclaim, it did so only *after prevailing* on its summary judgment motion in LLC's case against it. The district court ruled in DotCom's favor on summary judgment, and dismissed LLC's complaint with prejudice. Costs were within the court's discretion. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (1999).

*Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 928 (4th Cir. 1995); *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. *Lone Star*, 43 F.3d at 928.

## III.

Section 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered. *See* 15 U.S.C. § 1125(a); *Microstrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 341 (4th Cir. 2001) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)); *Ale House Mgmt. Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 140 (4th Cir. 2000). A party claiming prior use of a trade or service mark may, as LLC does here, seek to enjoin a defendant's use of its registered mark and cancel that defendant's registration of the mark under § 14 of the Lanham Act, 15 U.S.C. § 1064. *See Marcon, Ltd. v. Helena Rubenstein, Inc.*, 694 F.2d 953, 956 (4th Cir. 1982). However, before a federal registration may be cancelled, the plaintiff must prevail in its infringement action. In order to prevail in an action for service mark infringement and unfair competition under § 43(a) of the Lanham Act, a plaintiff must "first and most fundamentally prove that it has a valid and protectable mark." *Microstrategy*, 245 F.3d at 341. If the plaintiff's mark is deemed to be protectable, it still cannot prevail unless it can show that the defendant's use of an identical or similar mark is likely to cause confusion among consumers.[5] *Perini*, 915 F.2d at 124. Here, summary judgment was appropriate because LLC cannot clear the first hurdle; that is, it cannot show that its mark, in relation to the executive recruiting services it provides, is entitled to service mark protection.

---

[5]The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law. *See Lone Star*, 43 F.3d at 930, n.10.

To ascertain whether a mark is protected, we must determine whether it is 1) generic, 2) descriptive, 3) suggestive or 4) arbitrary or fanciful. *Perini*, 915 F.2d at 124 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). "The protection accorded trademarks [and service marks] is directly related to the mark's distinctiveness." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). If a term is generic (the common name for a product or service), it is ineligible for protection. The public has an inherent right to call a product or service by its generic name. *Perini*, 915 F.3d at 124; *see Sara Lee*, 81 F.3d at 464. Fanciful (made-up words expressly coined to serve as trade or service marks), arbitrary (common words applied in unfamiliar ways), and suggestive marks (words that connote, rather than describe, some quality or characteristic of a product or service) are inherently distinctive, and thus receive the greatest protection against infringement.[6] *Sara Lee*, 81 F.3d at 464. A descriptive mark may be eligible for protection, but only if it has acquired a "secondary meaning" in the minds of the public. *Id.*

The district court found that "U.S. Search," as a composite mark, is not fanciful, arbitrary, or suggestive when used in connection with LLC's services. The court explained that the mark was either generic or descriptive, and even assuming it was descriptive, the record was devoid of any showing of secondary meaning. Viewing the facts in the light most favorable to LLC, we agree with the district court for the reasons that follow.

## A.

LLC asserts first that the term "U.S. Search" is suggestive rather than merely descriptive when applied to its executive recruiting services. Suggestive terms, as the word implies, suggest rather than describe goods or services. They require the observer or listener to use imagination and perception to determine the nature of the goods or services. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). "Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some

---

[6]Examples of fanciful marks include Clorox (R), Kodak (R), Polaroid (R), and Exxon (R). *Sara Lee*, 81 F.3d at 464. Camel (R) cigarettes and Apple (R) computers are examples of arbitrary marks. *Id.*

operation of imagination to connect it with the goods [or services], it is suggestive." *Id.* (quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)).[7]

The burden was on LLC to show that its use of "U.S. Search" was entitled to service mark protection. *See Ale House*, 205 F.3d at 140. LLC contends that clear evidence existed to demonstrate that its mark was suggestive. Specifically, it argues that the fact that the PTO allowed DotCom to register its "1-800-U.S. Search" mark, without requiring a showing of secondary meaning, is prima facie evidence that LLC's "U.S. Search" is suggestive rather than descriptive.

It is well established that when the PTO issues a certificate of registration, that registration provides the *registrant* with prima facie evidence of 1) the validity of the mark and its registration, 2) the registrant's ownership, and 3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration. *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Thus, with the certificate of registration, "the registrant obtains prima facie evidence that its mark is not generic in the eyes of the relevant public, *see* 15 U.S.C. § 1064(3), and that its mark is not 'merely' descriptive, but at a minimum is descriptive *and* has obtained secondary meaning, *see* 15 U.S.C. § 1052(e)." *Id.* (emphasis in original). We have held that a district court should not freely substitute its opinion for that of the PTO because a decision to register a mark, without requiring evidence of secondary meaning, is "powerful evidence that the registered mark is suggestive and not merely descriptive." *RFE Indus., Inc. v. SPM Corp.*, 105 F.3d 923, 926 (4th Cir. 1997). The prima facie evidence provided by the certificate of registration is generally sufficient to establish a question of material fact that cannot be resolved on summary judgment. *America Online*, 243 F.3d at 818.

---

[7]Coppertone (R), Orange Crush (R), and Playboy (R) are good examples of suggestive marks because they conjure images of the associated products without directly describing those products. *Sara Lee*, 81 F.3d at 464. Examples of merely descriptive marks include After Tan post-tanning lotion, 5 Minute Glue, and Yellow Pages phone directory. *Id.*

The critical distinction to be made between the above-mentioned cases and the case at hand is that here, *DotCom's* mark has been registered by the PTO, *LLC's has not*. LLC asks us to find evidence that its mark is suggestive because DotCom's mark was found to be suggestive. At first blush, LLC's argument indeed seems to make some intuitive sense. The marks are, after all, nearly identical. However, if we were to accept this argument, we would be ignoring a fundamental tenant of trademark law, namely, that the distinctiveness of a mark is measured *in connection with the particular goods or services* that are being offered. The distinctiveness of a mark cannot be determined in the abstract, but only by reference to the goods or services upon which the mark is used. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11:64 (4th ed. 2001). For example, the term "brilliant" may be descriptive when used in connection with a shop that sells diamonds, suggestive when denominating a furniture polish company, and arbitrary when used in connection with an applesauce cannery. *Id.*

DotCom's mark was registered by the PTO for "computer services, namely, providing databases in the field of individual telephone numbers, addresses and social security numbers." That the PTO deemed DotCom's mark to be suggestive simply has no bearing on whether LLC's use of "U.S. Search," in connection with *different* services (executive recruiting), is suggestive as well.[8]

In contrast to the paucity of evidence relied on by LLC to show that its use of "U.S. Search" is deserving of service mark protection, DotCom produced substantial evidence tending to show that the term is generic, or at most, descriptive. For example, DotCom provided numerous documents generated by Hiller and LLC that repeatedly use "search" as a synonym for executive recruiting and refer to recruiting

---

[8]LLC also argues that the PTO's December 5, 2000 office action, which asked LLC to disclaim the word "search" (and also rejected LLC's application for registration due to a likelihood of confusion with DotCom's mark and the mark of U.S. Record Search), was evidence that the PTO had determined that LLC's composite mark "U.S. Search" was suggestive. We reject this argument. Nowhere was it indicated in the office action that the PTO had considered the distinctiveness of "U.S. Search" in its entirety.

as a "search process." DotCom also submitted web page print-outs from several other recruiting firms that consistently use the word "search" as a synonym for executive recruiting. A Thompson & Thompson report indicated that over 3,600 employment placement firms use the word "search" in their name. DotCom also provided numerous examples of media references to executive recruiting companies as "search firms." We agree with the district court that the composite term, "U.S. Search," for executive recruiting services, operates to describe a service in a manner readily understandable to the consumer.[9]

## B.

LLC next argues that even assuming the district court was correct in finding "U.S. Search" to be merely descriptive, the court improperly ignored evidence of secondary meaning. We disagree. Secondary meaning is defined as "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini*, 915 F.3d at 125. Though no single factor is determinative, we have held that the following factors are relevant to the question of secondary meaning: 1) advertising expenditures, 2) consumer studies linking the mark to a source, 3) sales success, 4) unsolicited media coverage of the product, 5) attempts to plagiarize the mark, and 6) the length and exclusivity of the mark's use. *Id.* (citing *Thompson Medical Co. v. Pfizer, Inc.* 753 F.2d 208, 217 (2d Cir. 1985)).

Proof of secondary meaning entails a rigorous evidentiary standard. *Perini*, 915 F.2d at 125.[10] Though the existence of secondary meaning

---

[9]LLC seems to suggest that because it listed in its application for registration that it provides "pre-employment background verification services," its mark should be deemed suggestive. However, even if a mark may be suggestive or arbitrary as applied to *some* goods or services, that mark should be deemed descriptive if it is descriptive of *any* of the goods or services for which registration is sought. *See* 2 *McCarthy on Trademarks*, § 11:51. "U.S. Search" is merely descriptive of executive recruiting services.

[10]LLC had the burden to show secondary meaning 1) in DotCom's trade area and 2) prior to the time DotCom entered the market. *Perini*, 915 F.2d at 125-26.

is generally a question for the trier of fact, the district court, recognizing that the burden of proving secondary meaning is on the party asserting it, found the record to be "wholly devoid of any such showing." J.A. 1129. Even evaluating the record in the light most favorable to LLC, LLC has failed to satisfy *any* of the factors relevant to secondary meaning. For example, the record shows that LLC has spent *minimal* amounts of money on advertising and has enjoyed limited sales success.[11] LLC presented no evidence of attempts to plagiarize the mark, no evidence of any unsolicited media coverage, no consumer studies, and no evidence of exclusive use.[12] On the other hand, DotCom offered a consumer study it commissioned of individuals in the plastics industry who used, or were likely to use a recruiting firm.[13] This study showed that only 2% of those queried appeared to know "U.S. Search," the type of firm it is, and the services it provides.

Because LLC failed to demonstrate that "U.S. Search" has acquired secondary meaning, the district court was correct in finding the term to be ineligible for service mark protection. For this reason, the district court was not required to examine the issue of likelihood of confusion.

### IV.

For the foregoing reasons, the decision of the district court granting summary judgment in favor of DotCom is affirmed.

*AFFIRMED*

---

[11]Evidence of misdirected telephone calls to LLC that were intended for DotCom does not constitute evidence of secondary meaning. If anything, it shows only that the public associates the name "U.S. Search" with DotCom, *rather* than with LLC.

[12]Even assuming Hiller has used "U.S. Search" continuously since 1982 (despite closing his former company, bankruptcy, and moving the business), length of time *alone* is insufficient to establish secondary meaning.

[13]Survey evidence is generally thought to be the most direct and persuasive way of establishing secondary meaning. *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 795 (5th Cir. 1983).